**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**ELLEN LaFAYE MASSIE OGLESBY,**

    Plaintiff,

v.                                                                                               Civil Action No. 3:11-CV-100
                                                                                                (GROH)

**UNITED STATES,**

    Defendant.

**ORDER TRANSFERRING VENUE TO THE DISTRICT OF COLUMBIA**

Pending before this Court are the defendant's Motion to Transfer Venue to the District of Columbia [Doc. 9], filed on January 18, 2012, and the plaintiff's Motion to Deny the Change of Venue to the District of Columbia [Doc. 13] filed in response on February 17, 2012. Having reviewed the record and the arguments of the parties, this Court concludes that the defendant's motion should be **GRANTED** and the plaintiff's motion should be **DENIED**.

**BACKGROUND**

**I.     Factual Allegations**

The plaintiff's husband, Francis Alexander Oglesby, Jr., was a 57-year-old veteran of the United States military living in a nursing home after having one of his legs amputated when he was admitted to the Washington D.C. Veterans Affairs Medical Center ("DC VAMC") on June 14, 2006. Upon presenting with a red sacrum, perineum, and scrotum, Mr. Oglesby was diagnosed with cellulitis and administered antibiotics. When asked, Mr. Oglesby stated that he did not have, nor did he wish to complete, an advance directive.

During morning rounds on June 21, 2006, Dr. Charles Faselis noted that Mr. Oglesby's skin infection had improved, his vitals were stable, and he was in no distress. Later that day, Mr. Oglesby was found unresponsive in his room. A code team was called to intubate Mr. Oglesby and Dr. Faselis, as the attending on service, was contacted. Dr. Faselis called off the code team, explaining that Mr. Oglesby had previously indicated to him that he did not want to be resuscitated or intubated. Mr. Oglesby was pronounced dead. Later that evening, Dr. Faselis told the plaintiff that the cause of death was unknown but that he assumed that the cause was a cardiac event, e.g., ischemia or malignant arrhythima, and less likely pulmonary embolus because Mr. Oglesby was on a deep vein thrombosis prophylaxis.

According to the plaintiff, Mr. Oglesby was "admitted into the hospital to be a lab rat for Dr. Charles Faselis with his famous clinical studies" and "he was tortured, no phone in his room, no wheelchair in his room, naked, just a sheet, door shut." ([Doc. 1] at 1). In addition, the plaintiff claims that Dr. Faselis should not have ordered the code team to stop resuscitation or intubation because the hospital did not have a written advance directive on file.

## II.     **Procedural History**

On November 17, 2011, the plaintiff, a resident of West Virginia, filed suit against the United States in the Northern District of West Virginia, explaining that the Department of Veteran Affairs informed her that the United States was the proper defendant. The sole cause of action asserted in the Complaint [Doc. 1] is "wrongful death."

On January 18, 2012, the United States filed the instant Motion to Transfer Venue to the District of Columbia [Doc. 9]. In seeking a transfer to the District of Columbia, the

United States first explains that the only waiver of sovereign immunity available to the plaintiff as a jurisdictional basis for this lawsuit arises under the Federal Tort Claims Act ("FTCA"). Conceding that the Northern District of West Virginia is a proper venue for an FTCA action based upon the plaintiff's place of residence, the United States argues that the action should nevertheless be transferred to the District of Columbia for the convenience of parties and witnesses pursuant to 28 U.S.C. § 1404(a).

On February 17, 2012, the plaintiff filed the instant Motion to Deny the Change of Venue to the District of Columbia [Doc. 13]. In opposing a transfer to the District of Columbia, the plaintiff argues that such a transfer would place a hardship on her because she does not own a car. In addition, the plaintiff appears to contend that this case will primarily involve documentation (or the lack thereof) and not the testimony of witnesses. Finally, the plaintiff relates a concern that the law applied in the District of Columbia could be more adverse to her interests than the law applied in the Northern District of West Virginia.

## DISCUSSION

**I.  Applicable Standard**

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The threshold question of a § 1404(a) analysis, therefore, is whether the judicial district to which transfer is sought qualifies under the applicable venue statutes as a judicial district where the civil action "might have been brought." If a court answers this initial question in the affirmative, a court must then make

3

an "individualized, case-by-case consideration of convenience and fairness." ***Toney v. Family Dollar Store, Inc.***, 273 F.Supp.2d 757, 763 (S.D. W.Va. 2003) (quoting ***Stewart Org., Inc. v. Ricoh Corp.***, 487 U.S. 22, 29 (1988)). In making a § 1404(a) analysis, a court has broad discretion. ***Nichols v. G.D. Searle & Co.***, 991 F.2d 1195 (4th Cir. 1993).

## II. Analysis

### A. This Civil Action "Might Have Been Brought" in the District of Columbia.

Relevant to this threshold determination is 28 U.S.C. § 1402(b), which provides:

Any civil action on a tort claim against the United States under [28 U.S.C. § 1346(b)[1]] may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred.

Applying § 1402(b) to the instant case, there is no question that this civil action could have been brought in the District of Columbia. Every act or omission complaint of allegedly occurred at the DC VAMC within the District of Columbia. Having overcome the initial threshold question, this Court must now consider the convenience of the respective venues.

### B. The District of Columbia is the More Convenient Venue.

To determine the more convenient venue, this Court is obliged to address the following factors: (1) the ease of access to sources of proof; (2) the convenience of parties

---

[1] As relevant here, 28 U.S.C. § 1346(b) provides that "the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for . . . death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act occurred." 28 U.S.C. § 1346(b)(1).

4

and witness; (3) the cost of attendance for witnesses; (4) the availability of compulsory process; (5) the interest in having localized interests decided at home; and (6) the interests of justice. As explained below, this Court concludes that these factors weigh in favor of a transfer to the District of Columbia.

### 1. The Ease of Access to Sources of Proof

In this case, sources of proof will potentially consist of witness testimony and documentary evidence. In sum, this factor weighs in favor of a transfer of venue.

"Documents may be transferred from one district to another district with little difficulty, using electronic means of duplication and transmission." ***Local Union No. 3 IBEW v. GE Int'l, Inc.***, 2011 WL 1842239, *3 (S.D.N.Y. May 9, 2011) (citing ***Eres N.V. v. Citgo Asphalt Refining Co.***, 605 F.Supp.2d 473, 481 (S.D.N.Y. 2009)). Here, there is no indication that the documents involved will be voluminous or difficult to convert into electronic form for electronic distribution. Accordingly, the documentary part of this factor is neutral.

A number of witnesses will likely play a part in discovery and trial. With the exception of the plaintiff, all of the witnesses to the medical care received by Mr. Oglesby while at the DC VAMC are located in the District of Columbia. Accordingly, the testimonial part of this factor weighs in favor of a transfer of venue.

### 2. The Cost and Convenience of Parties and Witnesses

With regard to the parties, cost and convenience is neutral. The Northern District of West Virginia is lest costly and more convenient for the plaintiff, whereas the District of Columbia would probably be less costly and more convenient for the United States. As

5

noted above, however, all of the witnesses to the medical care Mr. Oglesby received while at the DC VAMC are located in the District of Columbia.  Thus, the District of Columbia is an exceedingly less costly and more convenient venue for the witnesses likely to be involved.  Accordingly, this factor weighs in favor of a transfer of venue.

### 3. The Availability of Compulsory Process

If venue is maintained in the Northern District of West Virginia, the trial in this matter will be held in Martinsburg.  Pursuant to Federal Rule 45(b)(2) of Civil Procedure, compulsory process is available within a 100-mile radius of Martinsburg.  As noted above, the majority of witness will be located in Washington D.C., which is inside of that radius.  Accordingly, this factor is neutral.

### 4. The Interests of Justice

Finally, this Court must consider the interests of justice, "'an analysis encompassing those factors unrelated to witness and party convenience.'"  *Original Creatine Patent Co., Ltd. v. Met-Rx USA, Inc.*, 387 F.Supp.2d 564, 571 (E.D. Va. 2005) (quoting *Acterna, L.L.C. v. Adtech, Inc.*, 129 F.Supp.2d 936, 939-40 (E.D. Va. 2001)).  This factor includes such considerations as the following: (a) a court's familiarity with the applicable law (especially relevant, for example, in cases in which the claims involve interpretation of another state's statutes or another court's jurisprudence); (b) the location where the claims at issue arose and any consequent local interest in resolving the case locally; and (c) the relative congestion of the courts' dockets.  *See Original Creatine*, 387 F.Supp. at 571 (citing *Intranexus, Inc. v. Siemens Medical Solutions Health Servs.*, 227 F.Supp.2d 581, 583 (E.D. Va. 2002)).

Here, these considerations weigh in favor of the District of Columbia. First, because the law of the place where the act or omission occurred applies, see 28 U.S.C. § 1346(b)(1), the law of the District of Columbia will govern. The District of Columbia is undisputably more familiar with its own law, especially the very detailed area of medical malpractice. Second, the plaintiff's claim arose exclusively from acts or omissions that occurred at the DC VAMC. Consequently, the District of Columbia has a clear interest in resolving the case locally where the DC VAMC is located. Third, this Court is unaware whether the District of Columbia docket is less congested than that of the Northern District of West Virginia. In sum, however, this factor weighs in favor of a transfer of venue.

## CONCLUSION

For the foregoing reasons, this Court concludes that the District of Columbia is the more convenient venue. As such, the United States' Motion to Transfer Venue to the District of Columbia **[Doc. 9]** is hereby **GRANTED** and the plaintiff's Motion to Deny the Change of Venue to the District of Columbia **[Doc. 13]** is hereby **DENIED**. Accordingly, this Court hereby **ORDERS** that this matter be transferred to the District of Columbia.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein and to send a copy to the *pro se* plaintiff.

**DATED:** April 10, 2012.

GINA M. GROH
UNITED STATES DISTRICT JUDGE